**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**BROWARD DIVISION**

MID-CONTINENT CASUALTY COMPANY, a
foreign corporation,

        Plaintiff,

vs.

CENTERLINE HOMES CONSTRUCTION, INC., a
Florida Corporation, COMPLETED COMMUNITIES
II, LLC, a Florida Corporation, CENTERLINE
HOMES AT GEORGETOWN, LLC a Florida
Corporation, CENTERLINE HOMES, INC., a Florida
Corporation, UNITED FRAMERS, INC., a Florida
Corporation, OLSCHEWSKI and CHAD PRANDI,
citizens of Florida, et al.

        Defendants.
_____ /

FILED by __VT__ D.C.
ELECTRONIC

**March 31, 2010**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

Case No.:

# 10-CV-60484-Moreno-Torres

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Mid-Continent Casualty Company ("MCC"), sues the Defendants, Centerline

Homes Construction, Inc. ("CHC"), Centerline Homes at Georgetown, LLC ("CHG"),

Centerline Homes, Inc. ("CH"), Completed Communities II, LLC ("Completed Communities")

(collectively "Centerline"), United Framers, Inc. ("United Framers"), Krzysztof Olschewski and

Chad Prandi, Victor Conte and Luciana Conte, Howard Wong and Rosemarie D. Wong, Darrell

Gonzales and Jewel Gonzales, Marlene Bennett, Michael Gallacher and Randal J. Baker, Garry

Poulsen and Donna Poulsen, Charles DiFalco and Monica L. DiFalco, Stephanie Steiner, Jean-

Sebastian Picotte and Alessandra Cunha, Marc-Andre Boisseau, Larry Fitzgerald and Jessica

Fitzgerald, Gary Delgreco, Jr. and Corrnie Delgreco, Philip R. Stalcup and Nancy B. Stalcup,

Richard Perrin and Maria Perrin, Troy Marchese and Dina Marchese, Dominic Giannetti and

Lauren Giannetti, Yvrose Meyer and Darly Meyer, Jeffrey Korentur and Lori J. Dahan, Jerrold

P. Gultz, Wayne Siegel and Mandy Siegel, Thakur Lallo and Mahendrawattie Lalloo, Kimberly

14470430v1 908840 56475

A. Baron Mandis, Gary Marozi, Frank Gitto and Mark Gitto, Walter Dinneen and Vickie Dinneen, Shirley Mueller, Ronald Quakenbush and Lorraine Quakenbush, Hugh Casey, Donald Ambroise and Arliomey Ambroise, Kenneth Grant and Allison Grant, Carol Albano Suely Auerbach, Judith Braithwaite, Monique Crawrod and Elaine Shand, Janelle James, Vincent Mulligan and Virginia Mulligan, Marvin Reid, Alexander Popov and Susan Popov, Peter Teixeira and Janet Teixeira, Edmondo Catalfamo and Laura Portanova, Gianpaolo Ciancimino and Danielle Ciancimimo, Davidson Raymond and Jean Raymond, Roxane Bonheur, Nick Morakis and Karen Morakis, Mohammed Manzur and Kamrun Manzur, Louise M. Forte, Mark Bowes and Alison Bowes, Carl Abbott and Adele Abbott, Morton Brown and Ruth Brown and Alexandr Cherba and Yelena Cherba (collectively the "Homeowners") for declaratory relief and alleges:

## NATURE OF ACTION

1.      This is an action for declaratory relief pursuant to 28 U.S.C. §2201 and 2202 for the purposes of determining an actual controversy between the parties as to the scope of MCC's duty to defend and indemnify under its contracts of insurance with Centerline and United Framers.

## JURISDICTION AND VENUE

2.      Jurisdiction in this Court is proper, pursuant to 28 U.S.C. §1332(a), since the amount in controversy exceeds $75,000, exclusive of interest and costs, and this civil action is between citizens of different states.

3.      Venue is proper in the United States District Court for the Southern District of Florida, Broward Division, because one or more defendants reside here, the events or omissions

14470430v1 908840 56475

Case No.:

giving rise to the claims set forth below occurred here, the insurance contracts were issued and delivered here, and one or more of the projects are located here.

4.      All conditions precedent to the institution of this action have occurred, been performed or have been waived.

## THE PARTIES

5.      The Plaintiff, MCC, is an Ohio Corporation with its principle place of business in Tulsa, Oklahoma.

6.      The Defendant, CH, is a Florida corporation with its place of business in Coral Springs, Florida.

7.      The Defendant, HHC, is a Florida corporation with its place of business in Coral Springs, Florida.

8.      The Defendant, CHG, is a Florida corporation with its place of business in Coral Springs, Florida.

9.      The Defendant, Completed Communities, is a Florida corporation with its place of business in Coral Springs, Florida.[1]

10.     The Defendant, United Framers, is a Florida corporation with its place of business in Parkland, Florida.

11.     The Defendants, Krzysztof Olschewski and Chad Prandi, are citizens of the state of Florida residing in Boynton Beach, Florida.

12.     The Defendants, Victor and Luciana Conte, are citizens of the state of Florida residing in Boynton Beach, Florida.

---

[1]      Completed Communities is the successor entity by merger of the Centerline Homes at B&A, LLC, Centerline Homes at Tradition, LLC, and Centerline Port St. Lucie, Ltd.

14470430v1 908840 56475

Case No.:

13.     The Defendants, Howard and Rosemarie D. Wong, are citizens of the state of Florida residing in Boynton Beach, Florida.

14.     The Defendants, Darrell and Jewel Gonzales, are citizens of the state of Florida residing in Boynton Beach, Florida.

15.     The Defendant, Marlene Bennett, is a citizen of the state of Florida residing in Boynton Beach, Florida.

16.     The Defendants, Michael Gallacher and Randal J. Baker, are citizens of the state of Florida residing in Boynton Beach, Florida.

17.     The Defendants, Garry and Donna Poulsen, are citizens of the state of Florida residing in Boynton Beach, Florida.

18.     The Defendants, Charles and Monica L. DiFalco, are citizens of the state of Florida residing in Boynton Beach, Florida.

19.     The Defendant, Stephanie Steiner, is a citizen of the state of Florida residing in Boynton Beach, Florida.

20.     The Defendants, Jean-Sebastian Picotte and Alessandra Cunha, are citizens of the state of Florida residing in Boynton Beach, Florida.

21.     The Defendant, Marc-Andre Boisseau, is a citizen of the state of Florida residing in Boynton Beach, Florida.

22.     The Defendants, Larry and Jessica Fitzgerald, are citizens of the state of Florida residing in Boynton Beach, Florida.

23.     The Defendants, Gary and Corrnie Delgreco, are citizens of the state of Florida residing in Boynton Beach, Florida.

4

Case No.:

24.     The Defendants, Philip and Nancy Stalcup, are citizens of the state of Florida residing in Boynton Beach, Florida.

25.     The Defendants, Richard and Maria Perrin, are citizens of the state of Florida residing in Boynton Beach, Florida.

26.     The Defendants, Troy and Dina Marchese, are citizens of the state of Florida residing in Boynton Beach, Florida.

27.     The Defendants, Dominic and Lauren Giannetti, are citizens of the state of Florida residing in Boynton Beach, Florida.

28.     The Defendants, Yvrose and Darly Meyer, are citizens of the state of Florida residing in Boynton Beach, Florida.

29.     The Defendants, Jeffrey Korentur and Lori J. Dahan, are citizens of the state of Florida residing in Boynton Beach, Florida.

30.     The Defendant, Jerrold P. Gultz, is a citizens of the state of Florida residing in Boynton Beach, Florida.

31.     The Defendants, Wayne and Mandy Siegel, are citizens of the state of Florida residing in Boynton Beach, Florida.

32.     The Defendants, Thakur and Mahendrawattie Lalloo, are citizens of the state of Florida residing in Boynton Beach, Florida.

33.     The Defendant, Kimberly A. Baron Mandis, is a citizen of the state of Florida residing in Boynton Beach, Florida.

34.     The Defendant, Gary Marozi, is a citizen of the state of Florida residing in Port St. Lucie, Florida.

14470430v1 908840 56475

35.     The Defendants, Frank and Mark Gitto, are citizens of the state of Florida residing in Boynton Beach, Florida.

36.     The Defendants, Walter and Vickie Dinneen, are citizens of the state of Florida residing in Port St. Lucie, Florida.

37.     The Defendant, Shirley Mueller, is a citizen of the state of Florida residing in Port St. Lucie, Florida.

38.     The Defendants, Ronald and Lorraine Quakenbush, are citizens of the state of Florida residing in Port St. Lucie, Florida.

39.     The Defendant, Hugh Casey, is a citizen of the state of Florida residing in Port St. Lucie, Florida.

40.     The Defendants, Donald and Arliomey Ambroise, are citizens of the state of Florida residing in Lauderhill, Florida.

41.     The Defendants, Kenneth and Allison Grant, are citizens of the state of Florida residing in Port St. Lucie, Florida.

42.     The Defendant, Carol Albano, is a citizen of the state of Florida residing in Lauderhill, Florida.

43.     The Defendant, Suely Auerbach, is a citizen of the state of Florida residing in Lauderhill, Florida.

44.     The Defendant, Judith Braithwaite, is a citizen of the state of Florida residing in Lauderhill, Florida.

45.     The Defendants, Monique Crawrod and Elaine Shand, are citizens of the state of Florida residing in Lauderhill, Florida.

14470430v1  908840  56475

Case No.:

46.     The Defendant, Janelle James, is a citizen of the state of Florida residing in Lauderhill, Florida.

47.     The Defendants, Vincent and Virginia Mulligan, are citizens of the state of Florida residing in Lauderhill, Florida.

48.     The Defendants, Marvin Reid, is a citizen of the state of Florida residing in Lauderhill, Florida.

49.     The Defendants, Alexander and Susan Popov, are citizens of the state of Florida residing in Boynton Beach, Florida.

50.     The Defendants, Peter and Janet Teixeira, are citizens of the state of Florida residing in Boynton Beach, Florida.

51.     The Defendants, Edmondo Catalfamo and Laura Portanova, are citizens of the state of Florida residing in Boynton Beach, Florida.

52.     The Defendants, Gianpaolo and Danielle Ciancimimo, are citizens of the state of Florida residing in , Florida.

53.     The Defendants, Davidson and Jean Raymond, are citizens of the state of Florida residing in Boynton Beach, Florida.

54.     The Defendant, Roxane Bonheur, is a citizens of the state of Florida residing in Boynton Beach, Florida.

55.     The Defendants, Nick and Karen Morakis, are citizens of the state of Florida residing in Boynton Beach, Florida.

56.     The Defendants, Mohammed and Kamrun Manzur, are citizens of the state of Florida residing in Boynton Beach, Florida.

7

Case No.:

57.     The Defendants, Louise M. Forte, is a citizen of the state of Florida residing in Boynton Beach, Florida.

58.     The Defendants, Mark and Alison Bowes, are citizens of the state of Florida residing in Boynton Beach, Florida.

59.     The Defendants, Carl and Adele Abbott, are citizens of the state of Florida residing in Port St. Lucie, Florida.

60.     The Defendants, Morton and Ruth Brown, are citizens of the state of Florida residing in Port St. Lucie, Florida.

61.     The Defendants, Alexandr and Yelena Cherba, are citizens of the state of Florida residing in Boynton Beach, Florida.

## FACTUAL ALLEGATIONS

62.     Upon information an belief, Centerline contracted with subcontractors to install drywall on projects located in Broward, Palm Beach, and Saint Lucie Counties, Florida (the "Projects").[2]

63.     One of the subcontractors was United Framers who allegedly supplied and/or installed Chinese Drywall in the Homeowners' homes.

64.     Centerline is a developer that builds homes and residential communities and then sells the homes to prospective buyers/homeowners.

65.     The Projects include, among other things, single and multi-family homes such as townhouses and condominiums and were primarily built between May 2005 and May 2007.

66.     After the Projects were completed and/or put to their intended use, Centerline began to receive complaints from homeowners regarding alleged property damage and/or bodily

---

[2]     MCC does not have copies of the subcontracts between the subcontractors and Centerline, but copies will be obtained during discovery, if they exist.

8

injury occurring as a result of the Chinese Drywall in homes that one or more of the Centerline entities sold to the Homeowners.

67. The Homeowners sued Centerline in multiple lawsuits. ("Underlying Actions"). A copy of an Appendix referencing each lawsuit and corresponding copies of the lawsuits are attached as Exhibit "A" and Composite Exhibit "B."

68. The Homeowners seek damages allegedly caused by Centerline's and/or United Framers' defective work/defective product. These damages include the cost to remove and replace the defective work/defective product, the removal and replacement of all of the drywall, the replacement of other property such as air-conditioning and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliance, and other metal surfaces and household items. They also seek the repair or replacement of any materials contaminated or corroded by the drywall and economic damages such as diminution of the value of the home.

69. In addition, the Underlying Actions also seek equitable relief by way of injunctive, medical and environmental monitoring.

70. The Homeowners also seek in the Underlying Actions, the costs of moving while the home is being repaired, the cost of renting a comparable home while the repairs are taking place, loss of use of enjoyment, and loss of use of value of the home due to stigma.

71. Finally, the Homeowners' allege personal injury and negative health effects.

72. Upon information and belief, Centerline has not sued the subcontractors. However, Centerline has requested MCC as its insurer and the insurer of United Framers to defend and indemnify it as a result of the Homeowners' claims.

9

Case No.:

73.    The Homeowners and United Framers are proper parties as their rights may be affected by this Court's declaration.

## POLICY PROVISIONS

74.    MCC entered into contracts of insurance with Centerline and United Framers (the "Policies"). The Policies include:

### The Centerline Policies

*Primary:*
Policy No. 04-GL-000568052, from 9/08/04 to 9/08/05, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (multi-family);

Policy No. 04-GL-000572650, from 9/08/04 to 9/08/05, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (single-family);

Policy No. 04-GL-000603021, from 9/08/05 to 9/08/06, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (multi-family);

Policy No. 04-GL-000603065, from 9/08/05 to 9/08/06, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (single-family);

Policy No. 04-GL-000645709, from 9/08/06 to 9/08/07, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (single-family) (the "Centerline Primary Policies");

*Excess:*
Policy No. 04-XS-137856, from 12/08/04 to 9/08/05, with limits of $3,000,000 aggregate and $10,000 SIR each occurrence;

Policy No. 04-XS-140631, from 9/08/05 to 9/08/06, with limits of $3,000,000 aggregate and $10,000 SIR each occurrence;

Policy No. 04-XS-145904, from 9/08/06 to 9/08/07, with limits of $3,000,000 aggregate and $10,000 SIR each occurrence (the "Centerline Excess Policies");

### The United Framers Policy

Policy No. 04-GL-000656133, from 8/21/06 to 8/21/07, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate (the "United Framers Policy");

* * *

Copies of the Policies are attached as Composite Exhibit "C."

14470430v1 908840 56475

Case No.:

## *PRIMARY POLICIES*

75.     Both the Centerline and United Framers Primary Policies contain the following

pertinent insuring agreement:

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.   Insuring Agreement**

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)   The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

(2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

b.   This insurance applies to "bodily injury" and "property damage" only if:

(1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;

(2)   The "bodily injury" or "property damage" occurs during the policy period; and

(3)   Prior to the policy period, no insured listed under Paragraph 1. of Section **II** – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.   If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property

11

Case No.:

damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * *

76.    Both the Centerline and United Framers Primary Policies contain the following pertinent exclusions:

## 2.    Exclusions

This insurance does not apply to:

* * *

### a.    Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion dose not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b.    Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract", provided the 'bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

14470430v1 908840 56475

Case No.:

**f.    Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii)"Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(2) Any loss, cost, or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants", or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

* * *

**k.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

14470430v1 908840 56475

Case No.:

\*\*\*

m.   **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.   **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)   "Your product";

(2)   "Your work"; or

(3)   "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency. inadequacy or dangerous condition in it.

\*\*\*

77.   Both the Centerline and United Framers Primary Policies include the following pertinent definitions:

**SECTION V-- DEFINITIONS**

\* \* \*

3.   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

14

\* \* \*

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

> a.   It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b.   You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
> a.   The repair, replacement, adjustment or removal of "your product" or "your work"; or
>
> b.   Your fulfilling the terms of the contract or agreement.

\*\*\*

15.  "Pollutants" mean any solid, liquid, gaseous or vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16.  "Products-completed operations hazard":

> a.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> (1)   Products that are still in your physical possession; or
>
> (2)   Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>
> > (a)   When all of the work called for in your contract has been completed.
> >
> > (b)   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
> >
> > (c)   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

14470430v1  908840  56475

b.     Does not include "bodily injury" or "property damage" arising out of:

(1)     The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2)     The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3)     Products or operations for which the classification, listed in the Declarations or in a policy schedule, states the products completed operations are subject to the General Aggregate Limit.

17.     "Property damage" means:

a.     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***

21.     "Your product":

a.     Means:

(1)     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a)     You;

(b)     Others trading under your name; or

(c)     A person or organization whose business or assets you have acquired; and

(2)     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b.     Includes:

(1)     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

16

Case No.:

(2)     The providing of or failure to provide warnings or instructions.

c.     Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**     "Your work" means":

a.     Means:

(1)     Work or operations performed by you or on your behalf; and

(2)     Materials, parts or equipment furnished in connection with such work or operations.

b.     Includes:

(1)     Warranties or representatives made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2)     The providing of or failure to provide warnings or instruction.

***

78.     Both the Centerline and United Framers Primary Policies contain the following pertinent endorsement:

**EXCLUSION—DAMAGE TO WORK PERFORMED BY
SUBCONTRACTORS ON YOUR BEHALF  (CG 22 94 10 01)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion l. of Section I-Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

2.     Exclusions

•   This insurance does not apply to:

l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

***

14470430v1  908840  56475

Case No.:

## *CENTERLINE EXCESS POLICIES*

79.    The Centerline Excess Policies contain the following pertinent insuring

agreement:

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.    Insuring Agreement**

a.    We will indemnify the insured for ultimate net loss in excess of the retained limit because of bodily injury or property damage to which this insurance applies.  We will have the right to associate with the underlying insurer and the insured to defend any claim or suit seeking damages for bodily injury or property damage to which this insurance applies.  But

(1)    The amount we will indemnify for ultimate net loss is limited as described in SECTION IV - LIMIT OF INSURANCE;

(2)    We have a right to defend any claims or suits to which this Insurance applies but which are not covered by any underlying insurance shown in the Declarations, we also have the right to defend such claims or suits if the applicable limit of underlying insurance is exhausted;

(3)    At our discretion, we may investigate any occurrence and settle any claim or suit that we have a right to defend; and

(4)    Our right to defend any existing or future suits end when we have exhausted the applicable Limit of Insurance in indemnification of judgments or settlements under Coverage A and B.

No other obligation or liability to indemnify or perform acts or services is covered unless explicitly provided for under SECTION II - DEFENSE.

b.    It is agreed that

(1)    The bodily injury or property damage must occur during the policy period of this policy; and

Prior to the policy period, no insured listed under Paragraph 1 of SECTION III - WHO IS AN INSURED and no employee authorized by you to give or receive notice of an occurrence or claim, knew that the bodily injury or property damage had occurred, in whole or in part.  If such a listed insured or authorized employee knew, prior to the policy period, that the bodily injury or property damage occurred, then any continuation, change or resumption of such bodily injury or property

14470430v1  908840  56475

Case No.:

damage during or after the policy period will be deemed to have been known prior to the policy period.

(2)     Bodily injury or property damage which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1 of SECTION III WHO IS AN INSURED or any employee authorized by you to give or receive notice of an occurrence or claim, includes any continuation, change or resumption of that bodily injury or property damage after the end of the policy period.

(3)     Bodily injury or property damage will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of SECTION III - WHO IS AN INSURED or any employee authorized by you to give or receive notice of an occurrence or claim

  (a)     Reports all, or any part, of the bodily injury or property damage to us or any other insurer,

  (b)     Receives a written or verbal demand or claim for damages because of the bodily injury or property damage; or

  (c)     Becomes aware by any other means that bodily injury or property damage has occurred or has begun to occur.

(4)     With respect to your liability (other than under a contract or agreement) for bodily injury to your employees arising out of and in the course of their employment by you.

  (a)     Bodily injury by disease must be caused or aggravated by the conditions of the employment, and

  (b)     An employee's last day of last exposure to conditions causing or aggravating such a disease must occur during the policy period of this policy.

(5)     Damages because of bodily injury include damages sought by any person or organization for care or loss of services resulting at any time from the bodily injury,

(6)     The bodily injury or property damage must be caused by an occurrence; and

(7)     The occurrence must take place m the coverage territory.

* * *

80.     The Centerline Excess Policies contain the following pertinent exclusions:

14470430v1 908840 56475

Case No.:

## 2.   Exclusions

This insurance does not apply to:

a.    Bodily injury or property damage either expected or intended from the standpoint of the insured.  This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect persons or property.

b.    Bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption or liability in a contract or agreement.  This exclusion does not apply to liability for damages:

    (1)   Assumed in contract or agreement that is an insured contract provided the bodily injury or property damage occurs subsequent to the execution of the contract or agreement; or

    (2)   The insured would have in the absence of the contract or agreement.

\* \* \*

k.    Property damage to:

    (1)   Property you own;
    (2)   Premises you sell, give away or abandon, if the property damage arises out of any part of those premises;

    (3)   That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the property damage arises our of those operation; or

    (4)   That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you.

Paragraph (3) and (4) of this exclusion do not apply to liability assumed under a railroad sidetrack agreement.

Paragraph (4) of this exclusion does not apply to property damage included in the products-completed operations hazard.

\* \* \*

n.    Property damage to impaired property or property that has not been physically injured, arising out of

20

Case No.:

    (1)    A defect, deficiency, inadequacy or dangerous condition in your product or your work, or

    (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to your product or your work after it has been put to its intended use.

* * *

o.    Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

    (1)    Your product;

    (2)    Your work; or

    (3)    Impaired property.

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

81.    The Centerline Excess Policies contain the following pertinent definitions:

## SECTION VI - DEFINITIONS

* * *

4.    Bodily injury means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

10.    Impaired property means tangible property, other than your work that is known or thought to be defective, deficient, inadequate or dangerous; or

    a.  It incorporates your product or your work that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

    (1)    The repair, replacement, adjustment or removal of your product or your work; or

14470430v1  908840  56475

Case No.:

(2)  Your fulfilling the terms of the contract or agreement.

\* \* \*

**15.**  Occurrence means:

 a. With respect to bodily injury or property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. This does not apply to your liability (other than under a contract or agreement) for bodily injury to your employees arising out of and in the course of employment by you; or

 b. With respect to your liability (other than under a contract or agreement) for bodily injury to your employees arising out of and in the course of employment by you, bodily injury caused by accident or disease.

\* \* \*

**20.**  a.   Products-completed operations hazard includes all bodily injury or property damage occurring away from premises you own or rent and arising out of your product or your work except:

    (1)  Products that are still in your physical possession; or

    (2)  Work that has not yet been completed or abandoned.

  b.   Your work will be deemed completed at the earliest of the following times:

    (1)  When all of the work called for in your contract has been completed;

    (2)  When all of the work to be done at the site has been completed if your contract calls for work at more than one site;

    (3)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  c.   This hazard does not include bodily injury or property damage arising out of:

14470430v1 908840 56475

Case No.:

    (1)     The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it; or

    (2)     The existence of tools, uninstalled equipment or abandoned or unused materials.

21.   Property damage means:

    a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

22.   Retained limit means the greater of:

    a. The sum of amounts applicable to any claim or suit from:

    (1)     Underlying insurance, whether such underlying insurance is collectible or not; and

    (2)     Other collectible primary insurance; or

    b. The self-insured retention.

23.   Self-insured retention means the amount in Item 3 of the Declarations.

* * *

30.   Your product means:

    a.     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (1)     You;

    (2)     Others trading under your name; or

    (3)     A person or organization whose business or assets you have acquired; and

    b.     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Your product includes:

14470430v1 908840 56475

Case No.:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    b.    The providing of or failure to provide warnings or instructions.

Your product  does not include vending machines or other property rented to or located for the use of others but not sold.

**31.**    Your work means:

    a.    Work or operations performed by you or on your behalf; and

    b.    Materials, parts or equipment furnished in connection with such work or operations.

Your work includes:

    a.    Warranties or representation made at any time with respect to the fitness, quality, durability, performance or use of your work; and

    b.    The providing of or failure to provide warnings or instructions.

\* \* \*

82.    The Centerline Excess Policies contain the following pertinent damage to work performed by subcontractors exclusion:

**EXCLUSION - DAMAGE TO WORK PERFORMED BY**
**SUBCONTRACTORS ON YOUR BEHALF (MU 6149)**

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA POLICY**

Exclusion m. of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

- 2.    Exclusions

    This insurance does not apply to:

    m.    Damage To Your Work

        "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

All other conditions remain unchanged.

14470430v1  908840 56475

Case No.:

\* \* \*

## COUNT I – THERE IS NO DUTY TO DEFEND OR INDEMNIFY CENTERLINE FOR DAMAGES THAT DO NOT CONSTITUTE PROPERTY DAMAGE OR TO DEFEND OR INDEMNIFY CENTERLINE TO THE EXTENT THE DAMAGES DID NOT TAKE PLACE DURING THE POLICY PERIODS UNDER THE CENTERLINE POLICIES

83.     MCC realleges paragraphs 1 through 82 as paragraph 83 of Count I.

84.     MCC's duty to indemnify is limited to pay damages because of property damage caused by an occurrence.  To the extent the Homeowners are seeking to recover from Centerline the cost to repair and replace defective work/defective product, as opposed to damage caused by defective work/defective product, or damages for economic losses in the nature of the diminished value of the Projects, such damages do not meet the definition of property damage.

85.     MCC's duty to indemnify is limited to property damage that occurs during the policy period.  To the extent Centerline and/or the Homeowners are seeking to recover from MCC any damages that did not take place during the policy periods, MCC has no duty to defend or indemnify Centerline.

86.     In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to indemnify and in particular to:

    a.     Whether MCC has an obligation to indemnify Centerline for the cost to remove and replace the defective work/defective product;

    b.     Whether MCC has an obligation to indemnify Centerline for the cost to remove, repair and replace undamaged property in order to remove and replace the defective work/defective product for which no coverage is provided under the Policies;

    c.     Whether MCC has an obligation to indemnify Centerline for economic damages in the nature of the diminished value of the Projects;

14470430v1 908840 56475

Case No.:

    d.     Whether MCC has an obligation to indemnify Centerline for any equitable relief such as the recall the materials used to construct the Projects; and

    e.     Whether MCC has an obligation to indemnify Centerline for only those damages, if any, that took place during the policy periods.

87.     Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to what damages, if any, constitute property damage under the Centerline Policies.

88.     Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Centerline Policies.

Wherefore, MCC respectfully requests this Court to:

    a.     Take jurisdiction over this matter;

    b.     Find and declare that MCC's obligation under the Centerline Policies is limited to indemnifying Centerline for property damage, if any, as that term is defined in the Policies;

    c.     Find and declare that MCC's obligation under the Centerline Policies is limited to indemnifying Centerline for property damage that took place during the policy periods and if no property damage took place during the policy periods that MCC has no obligation to defend or indemnify Centerline; and

    d.     Enter any other order the Court deems proper under the evidence and circumstances.

## COUNT II – NO DUTY TO DEFEND AND INDEMNIFY TO THE EXTENT THE POLLUTION EXCLUSION APPLIES OR TO INDEMNIFY FOR DAMAGES EXCLUDED FROM COVERAGE UNDER THE PRIMARY POLICIES

89.     MCC realleges paragraphs 1 through 82 as paragraph 89 of Count II.

14470430v1 908840 56475

90.     The Centerline Primary Policies and the United Framers Policy contain the expected or intended, your product, damage to work performed by subcontractors on your behalf, pollution, impaired property, recall, and contractual liability exclusions, each of which limit, in whole or in part, MCC's obligation to defend or indemnify Centerline and United Framers.

91.     In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to defend and/or indemnify Centerline.

92.     Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to what damages, if any, are covered under the Centerline Primary Policies and United Framers Policy.

93.     Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Centerline Primary Policies and the United Framers Policy.

Wherefore, MCC respectfully requests this Court to:

a.     Take jurisdiction over this matter;

b.     Find and declare that MCC's obligation under the Centerline Primary Policies and the United Framers Policy is limited to indemnifying Centerline for damages, if any, not excluded by the Centerline Primary Policies and United Frmaers Policy;

c.     Find and declare that MCC has no obligation under the Centerline Primary Policies and the United Framers Policy to defend or defend Centerline if the pollution exclusion applies; and

d.     Enter any other order the Court deems proper under the evidence and circumstances.

27

14470430v1 908840 56475

Case No.:

## COUNT III – NO DUTY TO INDEMNIFY TO THE EXTENT THE POLLUTION EXCLUSION APPLIES OR TO INDEMNIFY FOR DAMAGES EXCLUDED FROM COVERAGE UNDER THE CENTERLINE EXCESS POLICIES

94.    MCC realleges paragraphs 1 through 82 as paragraph 94 of Count III.

95.    The Centerline Excess Policies contain exclusions a, b, k, n, and endorsement MU 6149, each of which limit, in whole or in part, MCC's obligation to defend or indemnify Centerline.

96.    In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to defend and/or indemnify Centerline.

97.    Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to what damages, if any, are covered under the Centerline Excess Policies.

98.    Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Centerline Excess Policies.

Wherefore, MCC respectfully requests this Court to:

a.    Take jurisdiction over this matter;

b.    Find and declare that MCC's obligation under the Centerline Excess Policies are limited to indemnifying Centerline for damages, if any, not excluded by the Centerline Excess Policies;

c.    Find and declare that MCC has no obligation under the Centerline Excess Policies to indemnify Centerline if the pollution exclusion applies; and

d.    Enter any other order the Court deems proper under the evidence and circumstances.

14470430v1  908840 56475

Case No.:

## COUNT IV – NO DUTY TO INDEMNIFY FOR EQUITABLE RELIEF, INCLUDING MEDICAL AND ENVIRONMENTAL MONITORING UNDER THE POLICIES

99.    MCC realleges paragraphs 1 through 82 as paragraph 99 of Count IV.

100.    MCC's duty to indemnify is limited to pay damages because of bodily injury or property damage caused by an occurrence.

101.    In view of the foregoing, a present actual controversy exists between the parties as to the scope of MCC's obligation to indemnify Centerline and in particular to:

    a.    initiate and pay for medical monitoring;

    b.    identify each and every home with defective drywall;

    c.    test every home in which defective drywall may be found;

    d.    retain experts/consultants to analyze the drywall in any way;

    e.    temporarily relocating the homeowners;

    f.    pay for storage fees;

    g.    to recall and/or to repurchase the home; and

    h.    initiate and pay for environmental monitoring.

102.    Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to whether equitable relief, including medical and environmental monitoring, constitutes damages and/or bodily injury/property damage under the Policies.

103.    Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Policies.

Wherefore, MCC respectfully requests this Court to:

    a.    Take jurisdiction over this matter;

14470430v1  908840  56475

Case No.:

  b.     Find and declare that MCC is not obligated under the Policies to pay for the costs to initiate and pay for medical/environmental monitoring or for any other equitable relief; and

  c.     Enter any other order the Court deems proper under the evidence and circumstances.

Dated: _____3/30_____/2010.

                              Ronald L. Kammer
                              Florida Bar No. 360589
                              rkammer@hinshawlaw.com
                              Pedro E. Hernandez
                              Florida Bar No. 30365
                              phernandez@hinshawlaw.com
                              HINSHAW & CULBERTSON LLP
                              9155 S. Dadeland Boulevard, Suite 1600
                              Miami, Florida 33156-2741
                              Telephone: 305-358-7747
                              Facsimile: 305-577-1063
                              *Counsel for Mid-Continent Casualty Company*